## SCHŒFFLER vs. SCHWARTING, Adm'r.

The facts set forth in the complaint asking for an injunctional order &c., in this case, were improbable in themselves, and the equities alleged in the complaint having been fully denied by the answer, and the affidavits filed in support of it, and there being no counter affidavits, a motion to dissolve the injunctional order should have been granted.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint in this action was substantially as follows:
1.　That in March, 1851, the plaintiff was sole owner of the printing establishment in the city of Milwaukee, known as the " Wisconsin Banner office," and sole proprietor and publisher of the " Wisconsin Banner " newspaper; that at that time he employed Rudolph Wendte (the defendant's intestate,) as bookkeeper and manager of the financial and commercial department of said establishment, for one year then next ensuing; that Wendte was to be paid six dollars per week, and was to put in, to be used for the purposes of the establishment, a certain note held by him for $200, the avails of which were to be accounted for to him on settlement; that it was further agreed that if, after the expiration of the said year, the business of the establishment should warrant it, and both parties should then be satisfied to continue their connection, Wendte should be admitted into the business as a partner, and in the meantime he should be advertised as a partner, and the business transacted under the name of Shœffler & Wendte; but no terms of partnership, or amount of partnership interest, were ever spoken of between Wendte and the plaintiff, and no further agreement had touching the remuneration for his services.　2.　That said agreement was carried out, except that upon the expiration of said year, nothing was said or done concerning the contemplated partnership by either party, and Wendte was not, in fact, then or at any time thereafter, admitted as a partner with the plaintiff in said business.　3.　That after the expiration of said year, Wendte continued to serve in said establishment in the capacity aforesaid until June, 1856, when, on account of sickness, he absented himself from the establishment and business until January, 1857, when he died.
4.　That during the whole of said period, from March, 1851, to June, 1856, there was never any settlement between Wendte and the plaintiff; that in April, 1855, the plaintiff purchased a certain other other newspaper establishment, and united the

paper published therein with the Wisconsin Banner ; that the purchase was made in the firm name of Shœffler & Wendte, but no part of the consideration, which was $5,500, was paid by Wendte; that during all of said period the account books of the establishment were kept by Wendte ; that it appears from them that he drew, from time to time, sums amounting to $2,944 75 ; and that from the time he left the office until his decease, he received, as appears from said books, the further sum of $488 56. 5. That on the 17th of February, 1857, the defendant was appointed administrator of Wendte's estate on the petition of his widow. 6. That on the 20th of June, 1857, an inventory and appraisal was made of the printing materials, &c., belonging to said newspaper establishment, by the persons appointed to appraise the estate of said deceased ; and that the plaintiff assented to the making of said inventory, being induced thereto by the representations of said administrator and his attorney, C. F. Bode, Esq., to the effect that as the name of said Wendte was in the firm, it was a legal and necessary proceeding in the settlement of said estate. 7. That the plaintiff advanced money to said administrator from time to time, to pay the debts and funeral expenses of the deceased, and for the expenses of his family ; and that he made such advances without any knowledge whatever of the state of the account of said deceased, and influenced mainly by a desire to be liberal toward his family, &c. 8. That on the 1st of September, 1857, the plaintiff, being influenced by the considerations above set forth, and not knowing how the account between Wendte and himself stood, and wishing to avoid litigation, and being further influenced by the representations of said administrator as to his claims and rights as a partner in said establishment, by virtue of having been appointed such administrator, and being anxious to dissolve such partnership (if in fact it did exist), and being entirely ignorant of the rights, powers and duties of said administrator in the premises, and being led to believe from his representations, and those of oth-

ers, friends of the widow of said deceased, that the fact of the name of said Wendte being in the firm of Schœffler & Wendte gave Wendte an interest in the establishment, and being without legal advice in the premises, entered into an agreement in writing with said administrator (a copy of which was annexed to the complaint,) by which the defendant sold to him all the right which Wendte had, at the time of his decease, in the property of said assumed partnership, for $2,500. And the plaintiff insists that said agreement was void; that at the time it was made Wendte had no interest in the establishment, and the plaintiff acted under a mistake induced by the false and mistaken representations of the defendant and his attorney. 9. That on the 1st of March, 1859, the plaintiff, then believing that said agreement was binding on him, executed to the defendant his four promissory notes, each for $407.75, payable in one, two, three and four years respectively, from January 15, 1857, to which day they were ante-dated, and, as collateral security, executed to the defendant a chattel mortgage upon a part of the material, &c., of said establishment. The complaint prays for an accounting between the parties, and demands judgment that the defendant be directed to deliver up said notes and mortgage, and that they be cancelled; and also asks for an injunctional order restraining the defendant, &c., from meddling with the property covered by said mortgage, or disposing of said notes, until otherwise ordered. An injunctional order was granted accordingly.

The answer denied all the material allegations of the complaint upon which the demand for relief is founded. The defendant moved to dissolve the injunctional order upon the pleadings and upon affidavits of himself and Charles F. Bode, Esq. The defendant's affidavit stated that in May, 1857, the plaintiff voluntarily offered for the interest of Wendte in the business of Schœffler & Wendte, $2,500, payable as expressed in the agreement annexed to the complaint; that the draft of that agreement was afterwards submitted to the plaintiff, who

requested time to look over it and submit it to his attorney, and it remained in the plaintiff's possession until March 1, 1859, when it was voluntarily executed by him and delivered to the deponent; that at the time of such delivery, the plaintiff, in pursuance of said agreement, paid the deponent $700 in cash, released a claim upon Wendte's estate for $169, and executed to the defendant the notes and chattel mortgage mentioned in the complaint, and also paid the interest for two years from January 15, 1857, amounting to $228, on said notes; that during all the negotiations between the parties, and from the death of Wendte, the books of the partnership were in the possession of the plaintiff; that the plaintiff never at any time, before the commencement of this action, pretended to deny that Wendte was in fact a partner with him in business; that there was no insurance on the property included in the chattel mortgage; that it was constantly deteriorating in value; that he believed the plaintiff was insolvent; and that if the injunctional order were continued deponent would be in great danger of losing his debt. Mr. Bode's affidavit stated that he was the defendant's attorney, and assisted him in the negotiations with the plaintiff; that during the whole of said negotiations, extending from March, 1857, to March, 1859, the time of the execution and delivery of the agreement mentioned in the complaint, the only subject discussed between the parties was the amount to be paid for Wendte's interest in the copartnership; and that the question whether Wendte was a partner was not at all in issue. The plaintiff filed affidavits in opposition to the motion, which however contained nothing of importance bearing upon the questions of fact at issue between the parties.

After a hearing upon the motion to dissolve, the court made an order denying the same, from which the defendant appealed.

*By the Court*, COLE, J. We are most clearly of the opinion that the injunctional order in this case should have been set

Schœffler vs. Schwarting, adm'r.

aside.   The injunction was issued to restrain the appellant, the defendant below, from interfering with property described in a chattel mortgage given to him as administrator of the estate of R. Wendte, to secure the payment of four promissory notes executed by the plaintiff in part payment of the interest of the estate of said Wendte in a newspaper establishment in Milwaukee.   The plaintiff sought to enjoin the defendant from intermeddling with the property mortgaged, and from disposing of the notes, and demanded that they be delivered up for cancellation.

It is exceedingly doubtful whether the matters stated in the complaint entitle the plaintiff to an injunction and to the relief he seeks.   It is claimed, in substance, that these notes and the mortgage were without any consideration, although given in March, 1859, for an interest of the estate of Wendte in a printing office and newspaper establishment, on the plaintiff's own proposition of the value of such interest.   The plaintiff avers in the complaint, that notwithstanding his having purchased such an interest and agreeing to pay therefor twenty-five hundred dollars—several hundred of which he has already paid—yet that in fact Wendte owned no such interest, but was a mere hired clerk in the establishment.   But the conduct of the plaintiff throughout can only be accounted for on the theory that a co-partnership existed between him and Wendte in the business of printing and publishing a German newspaper in Milwaukee.   He admits in the complaint that in 1851 an advertisement was published in the paper that Wendte was a partner in the newspaper establishment, and that the business thereof should be transacted under the name and style of Schœffler & Wendte.   After the death of Wendte, in 1857, he permitted an inventory and appraisement to be made and returned to the probate court, which stated that Wendte owned one half of the establishment at the time of his decease. In explanation of this, he says that he assented to the making of that inventory on account of representations made to him

by the administrator and his attorney. Such a statement is utterly improbable and inconsistent with all the rules of human conduct. What representations could induce him to have one half of his printing office inventoried and appraised as belonging to another, when in fact such party owned nothing therein? But not only this : it seems, from his own showing, that in 1859 he entered into a written contract to purchase that interest, and agreed to pay twenty-five hundred dollars for it, giving the notes and mortgage which he now seeks to have delivered up and cancelled, in part payment. He was induced to do this, again, by certain representations made by the administrator as to his claims and rights in the printing establishment. It is impossible not to distrust the correctness of such statements. They are very improbable on their face. For whether a partnership existed between the plaintiff and Wendte from March, 1851, to January, 1857, is a fact about which he could not possibly be mistaken. If Wendte was not his partner during this time, why did he acknowledge him as a partner in the columns of his paper? Why did he settle with tne administrator on the basis that Wendte owned one half of the establishment, when in fact he owned nothing? Why agree to pay twenty-five hundred dollars for an interest which had no existence? Why pay a portion of the consideration agreed upon for the partner's interest? There is nothing in the complaint that affords any satisfactory answer to these questions. So in regard to the alleged mistake in the settlement made, as to the true state of the accounts between Wendte and the firm. The respondent had all the books and accounts in his possession, and ample time to examine them ; and it is impossible to believe he settled under any mistake of fact as to the state of the account.

Thus it is seen to be exceedingly doubtful about the complaint itself presenting any case for an injunction. The matters stated are so improbable and inconsistent with the experienced course of human conduct, that one cannot help regard-

ing them with much suspicion.   For although the existence of
a partnership between the plaintiff and Wendte is flatly denied,
yet circumstances are stated and admissions made which tend
strongly to overcome the force of this denial.   But the ques-
tion does not rest upon the complaint alone.   The answer of
the administrator was filed, which fully denies all equities in
the complaint.   It shows most conclusively that the plaintiff
is not entitled to the relief which he demands.   And the an-
swer upon all points is powerfully supported by the affidavit
of Bode, who shows that the settlement made by the adminis-
trator with the plaintiff was fair, and that no fraud or improper
influence was brought to bear upon him to induce him to make
the purchase he did.   It appears from his statement, as well as
that of the administrator, that the plaintiff himself offered to
purchase the interest of Wendte in the printing establishment
for twenty-five hundred dollars, and that this agreement was
finally consummated by the execution of the written contract.
Under these circumstances, the court should have vacated and
set aside the injunctional order.

The order refusing to set aside and vacate the injunctional
order, is therefore reversed, and the cause remanded for furth-
er proceedings according to law.

[NOTE.—There was a subsequent appeal to this court in the above cause, which
will be found hereinafter reported, as of the June Term, 1863.—REP.]